UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER BASILE,

               Plaintiff,

- against -

THE WALT DISNEY COMPANY, et al.,

               Defendants.

1:09-cv-07112-RJH

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

    While visiting Disney World with his daughter in late 2007, plaintiff Christopher Basile was arrested and charged with disorderly intoxication. He was subsequently acquitted in a jury trial. He now brings malicious arrest and prosecution claims pursuant to state law and 42 U.S.C. § 1983 against the arresting officer, the sheriff's office at which he was booked, Orange County, Florida itself, Disney, and other Florida based entities and officials. He also brings claims under state law and 42 U.S.C. § 1983 alleging interference with parental custody rights. The parental custody rights claims arise out of the use of the fact of his arrest as evidence against him in New York custody proceedings. Certain Florida defendants have moved to dismiss or transfer for improper venue, some defendants also object to personal jurisdiction, and all have alternatively asserted that the complaint fails to state a claim. For the reasons that follow the Court severs the claims against the New York defendants and orders the remainder of the case

transferred to the Middle District of Florida, Orlando Division. The Court then dismisses the Complaint[1] as brought against the New York defendants for failure to state a claim.

I. BACKGROUND

A. Factual History

The following facts are drawn from plaintiff's complaint unless otherwise noted. The Court takes the well-pled factual allegations of the complaint as true and draws reasonable inferences in plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In late December of 2007 plaintiff visited Disney World with his nine-year-old daughter. (Cl. ¶ 16.) By December 30, he had been walking the parks for five days, and the strain of that exertion had exacerbated pain plaintiff suffered in his surgically repaired knees and back, leading him to walk with a slight limp. (*Id.*) As plaintiff waited for the monorail to the Magic Kingdom the afternoon of the 30th, a Disney employee (apparently having mistaken this limp for a drunken stumble) questioned plaintiff about whether or not he had been drinking alcohol. (Cl. ¶ 17.) Plaintiff replied that he had not been drinking and that a water bottle that he was holding did not contain any alcohol.[2] (*Id.*) Shortly thereafter plaintiff boarded the monorail but a Disney security officer,

---

[1] The Amended Complaint, [12], was filed November 12, 2009. The court refers to it herein as "Complaint" or by the abbreviation "Cl.".

[2] Other accounts outside of the complaint conflict with this telling of the story. Evidence outside of the complaint supports the possibility that witnesses saw plaintiff strike two other parked cars while attempting to park, inadvertently left his car running when he brought his daughter to the monorail, and was carrying a clear glass with a lime wedge and straws which he emptied onto the ground in response to questioning. (Police Report, Testimony of Witness 2, Exhibit B to Martin Aff.) The Court need not concern itself with the precise facts of the incident because for purposes of this motion it is only relevant where they took place.

defendant Melissa Morris, also apparently believing that plaintiff was excessively intoxicated, informed him that he would have to leave the monorail and would not be allowed to proceed to the Magic Kingdom. (Cl. ¶ 18.) Plaintiff again asserted that he had not been drinking, but after a brief discussion with Morris agreed to leave. (*Id.*) As plaintiff exited the monorail station he was arrested by Officer (and defendant) Massaro of the Orange County Police for disorderly intoxication. (Cl. ¶ 19.) Despite plaintiff's requests that he be given a breath or urine test to prove his sobriety, plaintiff was not given any such tests. (Cl. ¶ 19.)

Plaintiff's daughter watched this incident unfold. When plaintiff was taken into custody he asked that his sister, who was a Florida resident, be called to pick his daughter up. However Officer Massaro refused and had the child placed in the custody of Florida's Department of Children and Families. (Cl. ¶ 20.) Plaintiff's ex-wife, defendant Sherry Wiggs, apparently flew to Florida and picked her up shortly thereafter (the couple had divorced prior to this incident).

After his arrest plaintiff was initially detained "in solitary confinement." (Cl. ¶ 22.) He continued to assert his sobriety and request a test of his alcohol content, but was continually rebuffed in those requests. (*Id.*) He was formally charged with Disorderly Intoxication, and apparently released, that same day. (Cl. ¶ 23.) According to the Complaint the police pressured him to plead guilty to the charge by telling him that if he did so he would not face any penalties. (Cl. ¶ 23.) Plaintiff refused to so plead.

Shortly after plaintiff was arrested and charged, the fact of his arrest found its way into child custody proceedings in New York. On January 3, 2008 the appointed law guardian for the daughter, defendant Andrew Szczesniak, spoke on the phone with

plaintiff regarding the incident and threatened to bring an action in family court based on the arrest. (Cl. ¶¶ 51, 53.) Plaintiff doubted the propriety of Szczesniak's interference, and requested that he "resign and stay away from his daughter." (Cl. ¶ 52.) Nevertheless on January 5, 2008 Szczesniak brought an Order to Show Cause in New York family Court seeking to block plaintiff's access to his daughter. (Cl. ¶ 54.) On January 7, 2008 Ms. Wiggs, plaintiff's ex-wife, brought a similar action in family court based on the arrest. (Cl. ¶ 55.) Both orders were signed, blocking plaintiff's access to his daughter pending a hearing. (Cl. ¶¶ 54-55.) The Complaint alleges that both Szczesniak and Wiggs were in contact with the Florida officials prosecuting plaintiff, and that they collectively conspired against him. Furthermore at some point Westchester County's Department of Children's Services conducted a negligence proceeding against plaintiff, and one of the defendants (the complaint does not specify who) allegedly instigated that investigation. However following plaintiff's eventual acquittal in the Florida action, both Szczesniak and Wiggs voluntarily withdrew their actions with prejudice. (Cl. ¶60.) The Complaint makes no mention of the outcome of the negligence proceeding.

The Complaint alleges that because plaintiff refused to plead guilty to the Disorderly Intoxication charge, on January 30, 2008 "[d]efendant Orange County sought to further improperly pressure [p]laintiff by adding an additional charge of Contributing to the Delinquency or Dependency of a Minor." (Cl. ¶ 24.) Although the sheriff's office still indicated that plaintiff would receive no penalty should he plead guilty, defendant continued to refuse to plea. (*Id.*) On March 26, 2008 the office upped the pressure further by adding "a third charge of Disorderly Intoxication," but plaintiff still refused to plead guilty to any charge. (Cl. ¶ 25.) Finally, on September 24-25, 2008, plaintiff took

the charges to trial. (Cl. ¶ 27.) With the benefit of a victory on his suppression motion,[3] plaintiff won on all counts: the presiding judge dismissed some of the charges and the jury then found plaintiff not guilty. (Cl. ¶ 27.)

### B. Procedural History

Plaintiff filed this complaint in the Southern District of New York on August 12, 2009,[4] after which certain defendants filed motions to dismiss in lieu of answers. On November 12, 2009, plaintiff filed an Amended Complaint [12] and the Court accepted that amendment, *nunc pro tunc*, on December 14, 2009. [31]. At that time the Court set out a consolidated briefing schedule for the various defendants' motions to dismiss. Those motions, [37] [38] [40] [42] [44] [48], raising issues of personal jurisdiction, venue, and failure to state a claim, are now before the Court.

The Amended Complaint asserts sixteen causes of action. Six of these are federal causes of action: counts one through four assert 42 U.S.C. § 1983 violations by the Florida defendants related to plaintiff's arrest and prosecution, and counts fifteen and sixteen assert 42 U.S.C. § 1983 violations based on various defendants' (including one New York defendant's) interference with plaintiff's parental rights. Ten state law causes of action assert malicious prosecution, abuse of process, false arrest, assault, battery,

---

[3] Disorderly Intoxication is a misdemeanor offense in Florida. Although Officer Massaro stated she saw plaintiff in an intoxicated state, she only had witness accounts of disorderly conduct. Apparently finding that the arrest was based on a misdemeanor that had not been witnessed by the arresting officer, the presiding judge found the arrest unlawful and suppressed the evidence obtained following the arrest as fruit of the poisonous tree. (Motion to Suppress, Disposition, and Transcript, Ex. 4-5 to Plaintiff's Affirmation in Support of Opposition to Defendant Orange County's Motion to Dismiss.)

[4] Plaintiff is an attorney proceeding pro se.

5

defamation, conspiracy, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and wrongful interference with parental rights.

## II. DISCUSSION

### A. Venue

At the threshold the Court must consider whether to decide venue or personal jurisdiction first—it is hornbook law that venue and personal jurisdiction are threshold procedural issues to be decided before the substantive grounds in a motion to dismiss. *See e.g. Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 735 (S.D.N.Y. 1995) (treating venue and personal jurisdiction as threshold matters). Between these, personal jurisdiction is traditionally addressed first. *See Arrowsmith v. United Press International*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc) (remanding case "for consideration of the issue of jurisdiction over the person of the defendant and, in the event that this be found, the issue of venue, prior to consideration of the merits"). However "when there is a sound prudential justification for doing so … a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S. Ct. 2710, 2714-15, 61 L.Ed.2d 464 (1979). In this case there is personal jurisdiction with respect to at least some defendants, and the defendants who contest jurisdiction would likely be subject to personal jurisdiction in the Middle District of Florida. In such circumstances, it seems prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to this district irrelevant. *See also Corke v.*

*Saneiet M.S. Song of Norway*, 572 F.2d 77, 79-80 (2d Cir. 1978) (even absent personal jurisdiction, court may transfer case to a proper venue if in the interest of justice).

Although the parties address whether this entire action is properly venued in New York, "in a case of multiple claims, proper venue must be established with respect to each cause of action asserted." *Rothstein v. Carriere*, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999); *Saferstein*, 927 F. Supp. at 736 (same); 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3808, pp. 253 (2d ed.2002) ("in a case in which multiple claims are joined, the general rule that has been recited in a significant number of cases is that venue must be proper for each claim"). And "[w]here venue is challenged, it is plaintiff's burden to show that it is proper in the forum district." *Rothstein*, 41 F. Supp. 2d at 386 (citing *Saferstein*, 927 F. Supp. at 736.) The Court, then, must address whether plaintiff has demonstrated proper venue with respect to each count in the Complaint. In making that determination, "the Court may consider documents outside of the complaint." *See Cartier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007)

Proper venue, unlike personal jurisdiction and subject matter jurisdiction, is a purely statutory matter. In a case such as this, for which subject matter jurisdiction is not based on diversity of citizenship, 28 U.S.C. § 1391 defines when venue is available. Such actions are properly venued *only* in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situation, or (3) a judicial district in which any defendant may be found, if there is no district in which the action

may otherwise be brought." 28 U.S.C. § 1391(b). Here, defendant Massaro, among others, resides in Florida, and defendant Szczesniak, among others, does not, so the first prong is inapplicable. There is no property at issue in this action and it could have been brought in the Middle District of Florida, so those aspects of the second and third venue prongs are also inapplicable. The question then is whether a substantial part of the events or omissions giving rise to each claim occurred in the Southern District of New York. Plaintiff need not establish that this district has "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred here, even if a greater part of the events occurred elsewhere." *Neufeld v. Neufeld*, 910 F. Supp. 977, 986 (S.D.N.Y. 1996) (citations omitted).

Plaintiff's amended complaint suffers from the problem that none of the events giving rise to the core federal claims – for malicious arrest, prosecution, detention, and associated conspiracy – occurred in New York. Plaintiff was accused of being drunk and disorderly while visiting Disney World, which is in Florida, not New York. He was questioned and taken into custody on the monorail ramp at Disney World, also in Florida, not New York. He was detained in the Orange County Sheriff's office, which is also in Florida, not New York. He was formally charged in a Florida Court by Florida officials with Florida witnesses, was allegedly pressured by Florida prosecutors, tried before a Florida judge and acquitted by a Florida jury. Simply none of the events giving rise to these claims occurred in New York. Accordingly venue is improper for federal claims one through four. *See Engel v. CBS, Inc.*, 886 F. Supp. 728 (C.D.Cal. 1995) (transferring malicious prosecution claim to district of arrest and prosecution after concluding that "[t]he events giving rise to the claim for malicious prosecution involve the filing and

handling of the New York lawsuit, a series of events occurring solely in New York. Thus, the Court finds that venue in California is not proper pursuant to 28 U.S.C. §1391(a)(2).").

Plaintiff argues that since certain custody proceedings subsequently took place in New York, a "substantial part of the events" giving rise to his claims occurred in New York. That may be true with respect to the claims that involve the custody proceedings, but only two federal claims even arguably implicate them: claims fifteen and sixteen asserting interference with custody rights and associated conspiracy. Since venue must be demonstrated with respect to each claim, the facts relating to custody proceedings in this district do not render venue proper for claims one through four, which are based on different facts occurring outside this district.

Although venue is reviewed claim by claim, courts have sometimes applied "the doctrine of 'pendent venue', derived from the concept of pendent jurisdiction" to alleviate the potential problems of inefficiency and piecemeal litigation that the venue rules could otherwise generate. *Hsin Ten Enterprise USA, Inc. v. Clark Enterprise*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000). The doctrine of pendent venue is most often applied "where venue is lacking for a state law claim that arises from the same nucleus of operative facts as a 'properly venued' federal claim." *Garrel v. NYLCARE Health Plans, Inc.*, 1999 WL 459925 at *4; *See* 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3808, pp. 256 (2d ed.2002) ("Many cases have held that if a federally justiciable claim satisfied the venue statutes, then venue necessarily is proper over any state claim appended to it under the supplemental jurisdiction statute."). In addition to pendent venue over state claims, in certain cases pendent venue has been

9

applied over related federal claims. *See Id.* at *5 (discussing approaches to appending non-venued federal claims to properly venued federal claims); *Laffey v. Northwest Airlines, Inc.*, 321 F. Supp. 1041, 1042 (D.D.C. 1971) (utilizing "principal claim" approach and extending venue to "secondary" federal claim where venue proper for "principal" federal claim); *Trujillo v. Total Bus. Sys., Inc.*, 704 F. Supp. 1031, 1032 (D.Colo. 1989) (utilizing approach permitting pendent venue for federal claims only when venue on federal claim subject to "more specific" statute). Whether appending a federal or state claim, under the doctrine of pendent venue, "a federal court may *in its discretion* hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.*, No. 96 Civ. 4850, 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1999) (emphasis added). "In making its decision, a court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." *Hsin Ten Enterprise USA, Inc. v. Clark Enterprise*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (citations omitted).

For several reasons it is inappropriate to attach pendent venue to the federal malicious arrest and prosecution claims on the basis of the federal parental rights claims arising in New York. While the federal parental rights claims may be properly venued in this district, considering "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants," pendent venue on the basis of those claims is inappropriate. *Clark Enterprise*, 138 F. Supp. 2d at 462. The individuals in Florida who are the primary targets of the malicious prosecution claims

would be seriously inconvenienced by defending an action in New York. The locus of the arrest and trial, and all witnesses, officers, and documents are in Florida. And all of those facts are a necessary predicate for the parental rights claims, so the custody claims are secondary to the false arrest claims. In such circumstances pendent venue is inappropriate. *See also Cook v. UBS Financial Services, Inc.*, No. 07-0853, 2006 WL 760284 (S.D.N.Y. March 21, 2006) (properly venued "secondary" claims found not to give rise to pendent venue over "primary" federal law claims).

The Complaint also includes state law claims against all defendants based on the New York conduct of defendants Wiggs and Szczesniak (plaintiff's ex-wife and his daughter's law guardian). (*See* Complaint, Count 5 (malicious prosecution based on New York order to show cause); Complaint, Count 10 (defamation based on comments originating in New York).) However the Court is aware of no precedent permitting pendent venue over the Florida federal claims on the basis of these state law claims. Furthermore that proposition is analytically problematic since the only basis for subject matter jurisdiction of the state law claims is supplemental jurisdiction—they are themselves appended for jurisdictional purposes to the federal claims. Thus pendent venue for the federal arrest claims on the basis of these state law claims is inappropriate.

Since venue in this district is improper as to the four primary federal claims arising in Florida, and since there is no basis for the application of pendent venue, these claims should be dismissed, or severed and transferred to the Middle District of Florida.

### B. Severance

Upon finding that venue in this District is improper as to the primary claims, the Court would ideally order permissive transfer of the remaining claims so as to prevent duplicative litigation. *See id.* (after declining to exercise pendent venue, transferring what were properly venued claims to avoid piecemeal litigation). However permissive transfer of the remaining federal claims, the parental rights claims, is unavailable here because those claims could not have been brought in Florida as against the New York defendants. Although defendant Szczesniak is alleged to have attempted to use the facts of the Florida arrest in New York custody proceedings, and to have at some point communicated with people in Florida, those facts would not be sufficient to subject Sczsesniak to jurisdiction in Florida. *See Sternberg v. Nathan*, No. 96-9232, 1997 WL 225895 (2d Cir. May 7, 1997) ("[e]vidence of interstate telephone calls does not show that the recipient of the calls purposefully availed himself of the benefits and laws of the other state"). And a case cannot be transferred to a district in which … personal jurisdiction cannot be obtained over the defendant. 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3845, pp. 51 (2d ed.2002) (citing *Foster Milburn Company v. Knight*, 181 F.2d 949 (2d Cir. 1950) (Learned Hand, J.). The Court is thus faced with an action of multiple claims where venue is improper as to some defendants in this jurisdiction, but would be improper as to other defendants in the proposed transferee jurisdiction.

The Second Circuit long ago suggested severance as a procedural solution to this eventuality:

> Where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims

> against one or more defendants for the purpose of permitting the transfer
> of the action against the other defendants, at least in cases where… the
> defendants as to whom venue would not be proper in the transferee district
> are alleged to be only indirectly connected to the manipulations which
> form the main subject of the action.

*Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968). *Cf. Bell v. Classic Auto Group, Inc.*, No. 04-0693, 2005 WL 659196, at *6 (S.D.N.Y. 2005) ("when the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion") (citations omitted). This is just the circumstance described in *Wyndham*. Venue in the Middle District of Florida would only be improper as to defendants Szczesniak and Wiggs, who are only peripherally connected to the false arrest claims. The false arrest action against the Florida defendants is "upstream" of the claims against Szczesniak and Wiggs—the facts of the former will inform the latter but not vice versa. The Court thus finds it appropriate to sever the claims against defendants Szczesniak and Wiggs. The remaining action, which includes all sixteen counts as they are alleged against Disney, Massaro, Morris, Beary, Orange County Sheriff's Office, and Orange County, is TRANSFERRED to the Middle District of Florida, Orlando Division.

### C. § 1983 **Parental Custody Claims**

Now leaving aside the primary federal claims, the Court turns to the federal claims alleged against the New York defendant, Szczesniak, counts fifteen and sixteen of the complaint.[5] Counts fifteen and sixteen allege that Szczesniak engaged in a conspiracy

---

[5] There are no federal claims alleged against Ms. Wiggs, although her name appears in some of the related factual recitations.

to interfere with plaintiff's parental rights, and that he actually did interfere with those rights. However for the reasons that follow those counts fail to state a valid claim under Federal Rule of Civil Procedure 8(a)(2).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (abrogated in part by *Twombly*)). In *Twombly*, the Supreme Court held that to satisfy this standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *See Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009). Nonetheless, *pro se* submissions are entitled to "special solicitude," *Triestman v.. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir.2006), and even after *Twombly* and *Iqbal* courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009). Even a *pro se* Complaint however must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 129 S.Ct. at 1949. *See Fuentes v. Tilles*, No. 09-2954-cv, 2010 WL 1838702 (2d Cir. May 10, 2010) (quoting *Iqbal* and dismissing *pro se* complaint for failure to state a claim).

Count fifteen alleges that seven different individuals made "concerted unlawful and malicious false statements" to Westchester County's Department of Children's Services, and that by so doing they "knowingly and wrongfully interfered with [p]laintiff's parental rights and deprived him of his constitutionally protected liberty interest in the care, custody and management of his children." (Cl. ¶ 129.) As factual support, the complaint alleges that "[d]efendants' Wiggs, Czniak [sic], Sheriff Beary, Sheriff's Office, Disney and Massaro [] made false statements to Westchester's Children's Protective Services and encouraged them to bring a negligence action…" (Cl. ¶ 57.) Later, the complaint adds the allegation that "[d]irectly, or through The Florida Department of Children and Families, [d]efendants Czniak [sic], Massaro, Morris and one or more of the other [d]efendants contacted the Westchester County Children's Protective Services making false reports regarding [p]laintiff and his conduct." (Cl. ¶ 68.) The Complaint does not actually allege which defendants made statements to Westchester County, when such statements were made, or what their content may have been. Rather, it attempts to provide "a formulaic recitation of the elements of a cause of action," which under *Twombly* "will not do." *Id.*, 550 U.S., at 555, 127 S.Ct. 1955. Put another way, these blanket and unsupported allegations of misconduct do not "allow the court to draw the reasonable inference that [Szczesniak] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949. Accordingly count fifteen of the complaint fails to state a valid § 1983 claim.

Count sixteen, the conspiracy count, suffers from a similar defect. It alleges that "as a result of their concerted unlawful and malicious conspiracy [the seven count fifteen defendants] knowingly and wrongfully interfered with [p]laintiff's parental rights and

15

deprived him of his constitutionally protected liberty interest in the care, custody and management of his children…." (Cl. ¶ 132.) As factual support for this conspiracy, the Complaint alleges as follows:

> ¶ 91. All the Defendants Orlando County, Disney, Sheriff Beary, Wiggs, Czniak [sic], Morris and Massaro (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused Plaintiff damages that were a direct result of those acts.
>
> ¶ 92. In furtherance of their object, defendants did two or more overt acts against the Plaintiff.
>
> ¶ 93. The defendants agreed that the object or course of action was to arrest, detain, and confine Plaintiff without probable cause, and maliciously charge and prosecute him with crimes.

These allegations are nothing but conjecture and are thus legally insufficient to state a claim for civil rights conspiracy. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any [] meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Doe v. Green*, 593 F. Supp. 2d 523, 536 (W.D.N.Y. 2009) (conspiracy allegations were "based on nothing but rank speculation," and "[t]hat is not enough to survive a motion to dismiss") (*citing Morrison v. Sheffield*, No. 7:08-cv-00556, 2008 WL 5334370, at *2 (W.D.Va. Dec. 19, 2008) (civil rights conspiracy claim dismissed because complaint was "devoid of any sufficient allegation of defendants' meeting of the minds and relie[d] on conjecture"); *Sepulveda v. Woodford*, No. 1:05-cv-01143, 2008 WL 5219455, at *5 (E.D.Cal. Dec. 12, 2008) ("Plaintiff's conspiracy allegations are speculative at best. Plaintiff has not alleged facts sufficient to state a claim that there existed an agreement or meeting of the minds between defendants to violate his constitutional rights. Plaintiff fails to state a cognizable conspiracy claim.")). *See also*

16

*Twombly*, 550 U.S. at 557 (analogizing parallel conduct in antitrust context to "a naked assertion of conspiracy," and finding that "without some further factual enhancement [such allegations] stop short of the line between possibility and plausibility of "entitle[ment] to relief"). Accordingly count sixteen of the complaint fails to state a valid civil rights conspiracy claim.

## III. CONCLUSION

For the foregoing reasons all claims against defendants Wiggs and Szczesniak are severed. The remaining action, which includes all sixteen counts as they are alleged against Disney, Massaro, Morris, Beary, Orange County Sheriff's Office, and Orange County, is TRANSFERRED to the Middle District of Florida, Orlando Division. The federal claims against defendant Szczesniak are DISMISSED without prejudice and with leave to replead. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). The state claims against Szczesniak and Wiggs are dismissed for want of pendent jurisdiction. *See Brzak v. United Nations*, 597 F.3d 107, 113-114 (2d Cir. 2010) ("if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well").

SO ORDERED.

Dated: New York, New York
June 17, 2010

Richard J. Holwell
United States District Judge