**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHRISTOPHER BASILE,**

      **Plaintiff,**

**v.**                                         **Case No. 6:10-cv-993-Orl-35DAB**

**THE WALT DISNEY COMPANY, ET AL.,**

      **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court upon the following motions to which no timely response has been filed:

1. Defendant The Walt Disney Company's ("TWDC") Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim, brought in conjunction with Defendant Melissa Morris's Motion to Dismiss for Failure to State a Claim  (Dkt. 94);

2. Defendant Teresa Massaro's Motion to Dismiss (Dkt. 96);

3. Defendant Sheriff Kevin Beary's Motion to Dismiss (Dkt. 97); and

4. Defendant Orange County, Florida's Motion to Dismiss (Dkt. 99).

After considering the motions and memoranda provided, the Court **GRANTS** Defendant The Walt Disney Company's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 96).  The remaining Motions are **GRANTED in part** and **DENIED in part** as set forth below.

## I.  BACKGROUND

Plaintiff, proceeding *pro se*, filed an Amended Complaint in the United States District Court for the Southern District of New York on November 12, 2009, alleging that, on

-1-

December 30, 2007, while visiting Disney World with his daughter, Defendant Morris, an employee of Disney World, directed Defendant Massaro, an officer of the Orange County Sheriff's Department, to arrest Plaintiff, who was charged with Disorderly Intoxication by the Orange County Sheriff's Office.  (Dkt. 12 at ¶¶ 5, 16-30.)  Plaintiff also claims that Defendant Massaro insisted that the Florida Department of Children and Families take custody of his daughter during his detention, instead of allowing Plaintiff's sister to pick up the child.  (Dkt. 12 at ¶ 20.)  According to Plaintiff, he repeatedly demanded that he be allowed to take blood and urine tests during his detention to prove that he had not consumed alcohol, but these tests were never administered.  (Dkt. 12 at ¶¶ 27-28.)  After his release, Plaintiff was charged with Contributing to the Delinquency of a Minor and Driving under the Influence, charges that Plaintiff claims were brought against him to pressure him into pleading guilty so as to exonerate the Defendants of their allegedly unlawful conduct.  (Dkt. 12 at ¶¶ 27-30; Dkt. 94 at 12.)  He refused to plead guilty and was later acquitted of all charges.  (Dkt. 12 at ¶¶ 27-30; Dkt. 94 at ¶ 12.)

In this action, Plaintiff brings malicious arrest, detention and conspiracy claims under 42 U.S.C. § 1983 against Defendant Massaro, Orange County, its Sheriff's Office, TWDC, Defendant Morris and other entities and officials based in Florida.  (Dkt. 12 at ¶¶ 4-48.)  Plaintiff additionally brings a number of state law tort claims arising out of his arrest, detention and prosecution.  (Dkt. 12 at ¶¶ 49-127.)  These claims are lodged against the aforementioned Defendants, but also involve allegations of misconduct by two New York residents, Plaintiff's ex-wife, Defendant Wiggs, and a New York attorney, Defendant Szczesniak (collectively, the "New York Defendants").  (Dkt. 12 at ¶¶ 49-69, 85-89.)  Plaintiff claims that Defendant Wiggs and Defendant Szczesniak communicated with officials in

Orange County, Florida, seeking to encourage those officials to bring additional criminal process against Plaintiff.  (Dkt. 12 at ¶¶ 49-65.)  Finally, Plaintiff asserts additional claims against Defendants TWDC, Sheriff Beary, Orange County, Morris and the New York Defendants under state law and 42 U.S.C. § 1983 alleging interference with parental custody rights arising from the use of the fact of his arrest as evidence against him in New York custody proceedings.  (Dkt. 12 at ¶¶ 128-133.)

On June 30, 2010, District Court for the Southern District of New York severed the claims Plaintiff asserted against two the individual defendants from New York, dismissed the Amended Complaint as to the New York Defendants, and transferred the case to this Court. (Dkt. 87 at 1-2.)  On July 20, 2010, Defendant TWDC and individual Defendant Melissa Morris filed a joint Motion to Dismiss, asserting: (1) that the Court lacks personal jurisdiction over TWDC; (2) that the Amended Complaint is an impermissible "shotgun pleading"; and (3) the Amended Complaint fails to state a claim against Defendants Morris and TWDC.  (Dkt. 94 at 1.)  Defendant Orange County filed a Motion to Dismiss on July 20, 2010, contending that the Court should dismiss the Amended Complaint because (1) it is a "shotgun pleading"; (2) the claims arising under 42 U.S.C. § 1983 fail to state a policy or custom which led to the constitutional violations alleged; (3) the tort claims fail because the theory of *respondeat superior* does not apply to governmental entities under Florida law; (4) Plaintiff failed to comply with the statutory notice requirement set forth in Fla. Stat. § 768.28(6) before suing a governmental entity; (5) Plaintiff demands joint and several liability, which the Florida legislature has abrogated; (6) Plaintiff's allegations involving malice on the part of a governmental agency are barred under Fla. Stat. § 768.28; (7) Plaintiff improperly demands injunctive relief without demonstrating irreparable harm; and (8) Plaintiff improperly demands

punitive damages, which, under Fla. Stat. § 768.25(5), cannot be recovered from a municipality.  (Dkt. 99 at 1-13.)

Defendant Sheriff Beary filed a Motion to Dismiss on July 20, 2010, also contending that the Amended Complaint should be dismissed because it is a "shotgun pleading" and because it fails to state a claim under 42 U.S.C. § 1983 against him.  (Dkt. 97 at 1-8.) Defendant Massaro filed a Motion to Dismiss on July 20, 2010, again asserting that dismissal of the Amended Complaint is appropriate because it is a "shotgun pleading."  (Dkt. 96 at 5.) Defendant Massaro also argues that: (1) the suit against her in her official capacity should be dismissed because such a claim is tantamount to a suit against her employer, who is already party to this lawsuit; (2) that the claims against her in her individual capacity brought under 42 U.S.C. § 1983 fail because she is entitled to qualified immunity; and (3) that she is entitled to immunity from the state law tort claims against her under Fla. Stat. § 768.28(9)(a).  (Dkt. 96 at 5-11.)

On September 13, 2010, Plaintiff attempted to file a Memorandum in opposition to one or more of the motions to dismiss and also attempted to file a related Supplement to the Memorandum.  (Dkt. 113; Dkt 114.)   The Honorable Judge G. Kendall Sharp found these filings to violate the Local Rule 3.01 of the Middle District of Florida and accordingly ordered that they be stricken and deleted from the docket.  (Dkt. 117.)  This case was transferred from the Honorable Judge Sharp to the undersigned on September 24, 2010.  (Dkt. 123.) Plaintiff filed a Motion for Reconsideration and Motion for Extension of Time (Dkt. 129) on September 27, 2010, requesting that the Court reconsider the ruling of Judge Sharp striking his filings.  The Court denied that Motion and ordered that it too be stricken for violations of

Local Rule 3.01(g) and Local Rule 3.01(f).  (Dkt. 134 at 1.)   Plaintiff has otherwise failed to file any response in opposition to these motions, and the deadline for doing so has expired.

## II.  APPLICABLE LAW

### A.  <u>Personal Jurisdiction</u>

As a threshold procedural matter, the Court must determine whether personal jurisdiction exists over TWDC, which challenges the exercise of jurisdiction.  Federal courts undertake a two-step analysis to determine the existence of personal jurisdiction over a non-resident defendant.  <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996). First, a court must ascertain whether the state long-arm statute provides a basis for jurisdiction.  <u>Id</u>.  Second, the court must decide whether "sufficient minimum contacts exist between the defendant and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment."  <u>Id</u>. (quoting <u>International Shoe v. Washington</u>, 326 U.S. 310, 316 (1945)).

Under the Florida long-arm statute, a nonresident defendant is subject to jurisdiction in Florida if: (1) the claim arises out of one of the specified acts enumerated in Fla. Stat. § 48.193(1)(a)-(h); or (2) the nonresident defendant is engaged in "substantial and not isolated activity within the state."  Fla. Stat. § 48.193.  The Florida long-arm statute allows for the exercise of personal jurisdiction over a defendant who has committed a tortious act in Florida. Fla. Stat. § 48.193(1)(b).  The physical presence of a defendant is not required if the tort causes an injury in Florida.  <u>Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.</u>, 322 F. App'x 852, 854 (11th Cir. 2009).

The second step of the analysis, the due process inquiry, is two-fold: (1) a nonresident defendant must possess minimum contacts with the forum; such that (2) maintenance of the

suit comports with traditional notions of fair play and substantial justice. <u>Asahi Metal Industry Co., Ltd. v. Superior Court of Cal.</u>, 40 U.S. 102 (1987). Minimum contacts that give rise to the cause of action are sufficient to satisfy due process where those contacts involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws, such that a defendant could reasonably anticipate being haled into court there. <u>Sculptchair</u>, 94 F.3d at 631.

Where a plaintiff alleges the commission of an intentional tort, such an allegation may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum if the plaintiff suffers the "effects" or the "brunt of the harm" caused by the defendant's act in the forum state. <u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1285 (11th Cir. 2008) (citing <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984)). In order to satisfy this "effects" test, the plaintiff must allege that the defendant (1) committed an intentional tort; (2) the intentional tort was aimed at the plaintiff; and (3) the plaintiff felt the effects of the intentional tort in the forum state. <u>See id.</u>; <u>Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.</u>, 322 F. App'x 852, 855 (11th Cir. 2009).

B.     <u>Sufficiency of the Pleadings under Fed. R. Civ. P. 8(a)(2)</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). To satisfy this standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Though a court should not penalize a *pro se* plaintiff for "linguistic imprecision," it is not required to take

"wildly implausible" allegations contained in a complaint as true.  Kermanj v. Goldstein, No. 09-12135, 2010 WL 4230656, at *1 (11th Cir. Oct. 27, 2010).   Nor is a court required to "rewrite an otherwise deficient pleading" of a *pro se* litigant "in order to sustain an action." Johnson v. Wilbur, 375 F. App'x 960, 963 (11th Cir. 2010).

The Eleventh Circuit has repeatedly condemned complaints that it characterizes as "shotgun" pleadings.  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010).   The Eleventh Circuit described a "quintessential example" of shotgun pleadings as follows:

> It is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.  Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"- which comprises 146 numbered paragraphs - while also incorporating the allegations of any count or counts that precede it.  The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.

Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (citations omitted).  The Eleventh Circuit explained that tolerating pleadings of this sort "does a great disservice to the administration of civil justice."  Id.  When faced with a shotgun pleading, the Eleventh Circuit has directed district courts to strike the offensive pleading and require the plaintiff to replead the complaint.  Id. see also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 983 (11th Cir. 2008).

## III. DISCUSSION

A.   <u>Personal Jurisdiction</u>

With respect to the threshold issue of personal jurisdiction raised by TWDC, the Court finds that the allegations contained in Plaintiff's Amended Complaint are insufficient to satisfy the Florida long-arm statute or the requirements of due process, and, as such, the Court cannot exercise *in personam* jurisdiction over Defendant TWDC in this forum.   Plaintiff's Amended Complaint does not allege that Defendant TWDC is subject to suit in Florida; Plaintiff only states that TWDC is a "foreign corporation incorporated under the laws of the State of Delaware, is qualified to do business in the County of New York, the State of New York and has been doing business in the County of New York, the State of New York."   (Dkt. 12 at ¶ 4.)   Plaintiff nevertheless alleges that TWDC, though actions taken by employee Melissa Morris, committed torts in Florida.   (Dkt. 12 at ¶¶ 11, 18, 21.) This allegation is sufficient to state a prima facie case of jurisdiction under Florida's long-arm statute.   <u>See</u> Fla. Stat. § 48.193(1)(b).

Defendant TWDC, however, directly meets and entirely contradicts this allegation through the sworn Declarations of Marsh Reed and Margaret C. Giacalone.   (Dkt. 95; Dkt. 46.)   Ms. Reed, who serves as Vice President-Governance Administration and Assistant Secretary at TWDC, avers that TWDC is not qualified to do business in Florida; has not conducted, and does not currently conduct, business in Florida; has neither incurred nor paid taxes in Florida; has not appointed an agent for the service of process in Florida; has no office, place of business, or employees in Florida; owns no real estate, bank accounts or other asserts in Florida; and should not be listed in any Florida telephone directories.   (Dkt. 95 at ¶ 3.)   Ms. Giacalone, who serves as Vice President and Assistant Secretary of Walt

Disney Parks and Resorts U.S., Inc., asserts that Walt Disney World Parks and Resorts U.S. – not TWDC – is the owner and operator of the Walt Disney park in which Plaintiff claims the torts occurred.  (Dkt. 46 at  ¶ 3.)  Ms. Giacalone further declares that Defendant Morris was employed by Walt Disney Parks and Resorts U.S. – not by TWDC – during all times relevant to Plaintiff's Amended Complaint.  (Dkt. 46 at  ¶ 3.)

Where, as here, a defendant submits affidavits contrary to the allegations in the complaint, the burden shifts to the plaintiff to produce evidence supporting personal jurisdiction.  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).  Plaintiff has not furnished any evidence to rebut the Declarations supplied by Defendant TWDC, and the Court therefore accepts the contentions therein as true.  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1275 n.16 (11th Cir. 2009).  Defendant TWDC has established that it did not employ Defendant Morris, or any other person in Florida, during the period of time relevant to this action.  Plaintiff, therefore, cannot rely on allegations of tortious acts committed by employees of the theme park as a jurisdictional basis to satisfy the Florida long arm statute.  See Fla. Stat. § 48.193(1)(b).  The Declarations also defeat any argument that TWDC operated, conducted, carried on, or engaged in a business or business venture in this state, or that TWDC engaged in substantial and not isolated activity within this state.  See Fla. Stat. § 48.193(1)(a), (2).  The uncontroverted Declaration of Ms. Reed demonstrates that the company has virtually no connection with the state of Florida.  Accordingly, Plaintiff fails to carry his burden of establishing that TWDC is subject to the state long-arm statute.

Plaintiff also fails to establish that TWDC maintains the requisite minimum contacts with the forum state so as to satisfy the traditional notions of fair play and substantial justice

under the Due Process Clause of the Fourteenth Amendment.  Again, the Declaration of Ms. Reed shows that TWDC had little, if any, contact with the forum state.  Plaintiff offers no evidence to contradict this Declaration.  The Court therefore finds that TWDC has insufficient minimum contacts with the forum state to satisfy the due process inquiry.  Although Plaintiff names "Disney" in several counts that allege intentional torts, these allegations apparently concern conduct Plaintiff claims was committed by employees of Walt Disney World Parks and Resorts U.S.  In light of the apparent confusion in identifying the proper party in the Amended Complaint, the Court finds no occasion to apply the "effects" test to the intentional torts complained of by Plaintiff.  There is, accordingly, no basis for this Court to exercise personal jurisdiction over Defendant TWDC.

     B.    <u>Sufficiency of the Plaintiff's Amended Complaint</u>

     The Court additionally finds that Plaintiff's Amended Complaint is an impermissible shotgun pleading that fails to set forth sufficient facts to put each individual Defendant in this action on notice of the basis for the claims against them.  Each count of the Amended Complaint realleges and incorporates by reference all of the factual allegations that precede it, such that each count contains numerous factual allegations that could not possibly be material to that specific count.  In addition, many of the counts request judgment against "all the Defendants," but fail to specify any acts that would give fair notice to the Defendants as to the grounds upon which the count rests.  By way of example, Count III, "Violation of 42 U.S.C. 1983: Conspiracy," provides as follows:

     41.   Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 though 40 above with the same force and effect as if herein set forth.

     42.  As a result of [the] **concerted unlawful and malicious conspiracy** of Defendants Disney, Sheriff Beary, Sheriff's Office, Orange County, Massaro

and Morris, Plaintiff was deprived of both his right to liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the conspiracy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $10,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

(Dkt. 12 at ¶¶ 41-42) (emphasis in original).  The absence of specific factual allegations, along with the incorporation by reference of previous paragraphs, makes it exceedingly difficult for any of the named Defendants to frame a response to this count.

Counts V, VI, and X suffer from a different problem: these claims pertain to conduct allegedly undertaken by the New York Defendants, who no longer are parties to this action. Count V, for instance, which is styled as a claim for malicious prosecution, contains sixteen paragraphs describing alleged attempts by the New York Defendants to subject Plaintiff to further criminal charges in Florida and adverse administrative process in New York.  (Dkt. 12 at ¶¶ 49-65.)  The extent to which Plaintiff contends these allegations survive the severance of the New York Defendants is unclear.  What is clear is that the incorporation of these factual allegations into every count in the Amended Complaint after Count V forces the remaining Defendants, who appear to have little connection to the New York Defendants, to respond to apparently immaterial allegations.  As in Magluta, each subsequent count is thus "replete with factual allegations that could not possibly be material to that specific count, and any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."  Magluta, 256 F.3d at 1284.

In light of the deficiencies identified above, the Court finds that the Amended Complaint is an impermissible shotgun pleading.  The proper remedy for a shotgun pleading is not dismissal, but an order striking the pleading and requiring the plaintiff to replead the complaint.  Id. see also Davis, 516 F.3d at 983.  The Court therefore considers the Motions to Dismiss filed by the Defendants Morris, Massaro, Sheriff Beary and Orange County as motions to strike and motions for a more definite statement. The Court finds that the orderly administration of justice requires that these motions be granted and that Plaintiff's Amended Complaint be stricken. [1]

Based on the foregoing, it is hereby **ORDERED** as follows:

1.  Defendant The Walt Disney Company's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 96) is **GRANTED,** and the action is **DISMISSED** as to this Defendant;

2.  The Motions to Dismiss filed by Defendant Teresa Massaro (Dkt. 96), Defendant Sheriff Kevin Beary (Dkt. 97) and Defendant Orange County (Dkt. 99) are treated as Motions to Strike and Motions for More Definite Statement and are **GRANTED** to that extent.  The Motions are **DENIED** to the extent that they request that the Court dismiss this action.

3.  The **CLERK** is directed to **STRIKE** Plaintiff's Amended Complaint; and

4.  Plaintiff shall have up to and including **December 30, 2010,** to file a second amended complaint that complies with Federal Rule of Civil Procedure 8(a)(2), removes factual allegations that do not pertain to this action, and gives each individual defendant fair notice of the factual basis for each claim against it

---

[1] Because the Amended Complaint must be stricken and repled, the Court does not reach the substantive

segregated by separate and distinct counts.  Plaintiff is **admonished**, however, to consider the risk of sanctions under Federal Rule of Civil Procedure 11(c), including an assessment of fees and costs against him, for pursuing relief that is unwarranted under existing law or for raising factual allegations that wholly lack evidentiary support.  See Fed. R. Civ. P. 11.

   **DONE** and **ORDERED** in Orlando, Florida, this 2nd day of December 2010.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Party

---

grounds for dismissal raised by the individual Defendants. The Court implores Plaintiff to review and consider the substantive challenges asserted in reassessing the pleadings in this action.