# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHRISTOPHER BASILE,

        Plaintiff,

v.                                    Case No:  6:10-cv-993-Orl-36DAB

THERESA MASSARO,

        Defendant.

_____/

## ORDER

    This cause comes before the Court upon Defendant Teresa Massaro's ("Defendant" or "Massaro") Motion for Summary Judgment on Plaintiff's Third Amended Complaint, filed on April 10, 2012 ("Motion for Summary Judgment") (Doc. 200).  Plaintiff Christopher Basile ("Plaintiff" or "Basile"), proceeding *pro se*, filed a Response in Opposition to Defendant's Motion for Summary Judgment on May 23, 2012 ("Response") (Doc. 205)[1], to which Defendant replied on June 6, 2012 (Doc. 210).  The Court has determined that oral argument is unnecessary, and the Motion for Summary Judgment is ripe for review.  Upon consideration of the parties' submissions, including memoranda and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

## I.   BACKGROUND

### A.  Material Facts[2]

---

[1] Plaintiff's Response was not signed, in contravention of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.").  On August 13, 2012, Plaintiff filed a signed duplicate Response to Defendant's Motion for Summary Judgment.  Doc. 212.  For purposes of resolving the Motion for Summary Judgment, the Court relies upon Plaintiff's signed Response.

[2] The parties have not submitted a stipulated statement of undisputed facts. Defendant includes a Statement of Material Undisputed Facts within her Motion for Summary Judgment. Doc. 200,

Plaintiff is an attorney and has been a member of the New York bar since 1990.  Doc. 200, ¶ 1; Deposition of Christopher Basile, November 21, 2011, Doc. 190-2 ("Basile Dep."), pp. 4-5.[3]  The events giving rise to this action occurred on December 30, 2007, when Plaintiff visited Walt Disney World's Magic Kingdom with his nine-year old daughter.  Doc. 200, ¶ 2.  Plaintiff arrived at the Magic Kingdom in a rental car.  *Id.* ¶ 3; Basile Dep., p. 12.

Visiting tourist Cheryl Hussey ("Hussey") and Disney security guard Melissa Morris ("Morris") each provided sworn statements indicating that they witnessed Plaintiff hit at least two other vehicles with his car while in the parking area, and leave his car running.  *See* Doc. 190-Ex. 3, pp. 1-2; Basile Dep., pp. 23-26; Affidavit of Teresa E. Massaro in support of her Response in Opposition to Plaintiff's Motion for Summary Judgment ("Massaro Aff."), Doc. 198-Ex. 1., ¶ 4.  Hussey and Morris also stated that Plaintiff appeared to be intoxicated and was accompanied by a young girl.[4]  Massaro Aff., ¶ 4; Doc. 190-Ex. 3, pp. 1-2.  Although Plaintiff concedes that witnesses testified that he appeared intoxicated, he maintains that he was walking with a slight limp due to two surgically repaired knees and herniated disks, compounded by several days of walking through the Disney theme parks.  Basile Dep., p. 15; *see* Doc. 185, p. 17.

---

pp. 4-7.  In his Response, Plaintiff disputes ¶¶ 3, 5 and 6.  Doc. 212, pp. 6-8.  The Court notes where facts are undisputed, and otherwise determines facts based upon the parties' submissions, affidavits, and deposition testimony.

[3] On May 30, 2012, the Court denied Plaintiff's Motion to Strike any use of his deposition.  *See* Order, Doc. 208; Plaintiff's Motion to Strike, Doc. 204.  The Court found that Plaintiff was unwilling to "pay reasonable charges" for the transcript and was not entitled to a free copy, declined the opportunity to read it at the court reporter's office, and failed to identify any inaccuracies in the deposition transcript despite the fact that Defendant filed it on February 9, 2012.  *See* Order, Doc. 208, pp. 1-2; Fed. R. Civ. P. 30(f)(3).

[4] Another witness, Disney Supervisor Lana Kuhr, testified that while exiting the monorail, Plaintiff needed to lean on his daughter and the side of the tram for support.  *See Proceedings in State of Florida v. Christopher Basile*, September 24, 2008, Case No. 48-2008-MM-7763-O, Doc. 186-5, p. 17, lines 17-19.  Also, Plaintiff had difficulty finding identification in his wallet, and was fumbling and dropping things.  *Id.*, p. 15, line 24- p. 16 line 2.

Plaintiff admits that he has seen witness statements stating that he hit other vehicles with his rental car in the Magic Kingdom parking lot, but denies hitting other vehicles.  Basile Dep., 12-13.

In addition to relying upon others' statements, Massaro observed Plaintiff and determined that he was not sober enough to care for his daughter.  *See* Defendant's statement for Orange County Sheriff's Office Incident Report ("Incident Report"), December 30, 2007, Doc. 198-Ex. 2, p. 3 ("At this time I arrived and made contact with the intoxicated individual. He would not co-operate.  While questioning him I determined he was not sober enough to take care of his nine year old daughter").  Defendant arrested Plaintiff for disorderly intoxication pursuant to Florida Statute § 856.011, and at the request of an authorized Disney representative gave Plaintiff a trespass warning.  Doc. 200, ¶ 9; Massaro Aff., ¶ 4; Doc. 198-Ex. 2.  It is undisputed that at the time of Plaintiff's arrest, Defendant was acting within the scope and in the course of her duties as a law enforcement officer.  Doc. 200, ¶ 8; Massaro Aff., ¶ 4.

Following arrest, Plaintiff was detained for what he described as a "very little time", likely a matter of hours.  Basile Dep., pp. 19-20.  Plaintiff returned to Disney's property the following day, to get his rental car, but it had already been returned to the rental car company by Disney personnel.  *Id.*, pp. 28-29.

### B.  Procedural History

Plaintiff, *pro se*, filed a Second Amended Complaint against Walt Disney Parks and Resorts U.S., Inc. ("WDPR"), a WDPR security guard ("Defendant Morris"), Orange County, the Sheriff's Office ("Defendant Beary") and the arresting deputy, Massaro, for claims arising out of his arrest for disorderly intoxication and additional charges filed after his release.  *See* Doc. 138.  In the Second Amended Complaint, counts 1-4 and 13-14 were brought pursuant to

42 U.S.C. § 1983 for alleged violations of Plaintiff's constitutional rights, and counts 5-12 constitute state law claims for malicious prosecution, false arrest and imprisonment, assault, battery, defamation, conspiracy and witness tampering. *Id.* Defendants Orange County, Massaro, Beary, Morris and WDPR filed motions to dismiss Plaintiff's Second Amended Complaint. *See* Docs. 141-144. On August 26, 2011, the Court dismissed the claims against all defendants except Massaro, granting leave for Plaintiff to file a Third Amended Complaint against Massaro, only in her individual capacity, for Plaintiff's claims arising under 42 U.S.C. § 1983, and the common law claims of malicious prosecution, false arrest, and defamation. *See* Doc. 173, p. 4, ¶ 6. In its Order, the Court admonished Plaintiff to consider the risk of sanctions permitted by the Federal Rules of Civil Procedure for pursuing relief that is unwarranted under existing law, asserting claims for which there is no legal authority, or for raising factual allegations that wholly lack evidentiary support. *Id.*; Fed. R. Civ. P. 11(c).

On September 6, 2011, Plaintiff filed a Third Amended Complaint against Defendant in her individual capacity (Doc. 175). Plaintiff alleges "violations of 42 U.S.C. § 1983" for "arrest" and "detention and confinement", seemingly grounded in the Fifth and Fourteenth Amendments of the U.S. Constitution. *Id.*, Counts I and II, pp. 10-11. Additionally, Plaintiff alleges state law claims of malicious prosecution, false arrest and imprisonment, and defamation. *Id.*, Counts III-V, pp. 11-13. Plaintiff filed a Motion for Summary Judgment on January 27, 2012 (Doc. 185), which the Court denied on Jun 4, 2012 (Doc. 209).[5]

---

[5] Massaro filed a Motion for Sanctions against Plaintiff on February 13, 2012 (Doc. 191), requesting that the Court sanction Plaintiff for, among other things, his disrespectful attitude and disregard of the court's orders, including the order to mediate. Given the disposition of this case, the Motion for Sanctions will be denied.

II.    **STANDARD**

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original).  A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

III.   **ANALYSIS**

In her Motion to Dismiss, Defendant argues that because she acted with probable cause, and/or arguable probable cause, at all relevant times related to Plaintiff's arrest, she is entitled to summary judgment on each of Plaintiff's claims.  Doc. 200, p. 7.  The Court first addresses Plaintiff's claims grounded in alleged constitutional violations, and then his state law tort claims.

## A. Defendant is entitled to summary judgment on Plaintiff's constitutional claims

### 1. Plaintiff does not successfully allege constitutional violations

Plaintiff alleges violations of 42 U.S.C. §1983 for "arrest" and "detention and confinement" grounded in the Fifth and Fourteenth Amendments.  Doc. 175, pp. 10-11.

First, Defendant argues that Counts I and II must be dismissed because the Fifth Amendment's protection attaches only when federal government actors seek to deny a liberty or property interest.  Doc. 200, pp. 7-8; *Jordan v. Mosley*, 298 Fed. Appx. 803, 886 n. 5 (11th Cir. 2008).  The Fifth Amendment, which protects individuals from being "deprived of life, liberty, or property, without due process of law" applies only to federal, not state actors.   U.S. Const. Amend. V; *Jordan v. Mosley*, 298 Fed. Appx. 803, 886 n. 5 (11th Cir. 2008); *Knoetze v. U.S. Dept. of State*, 634 F.2d 207, 211 (5th Cir. 1981).[6]  It is undisputed that Defendant worked for the Orange County Sherriff during the time relevant to this action. Doc. 175, ¶ 4.  Accordingly, Plaintiff's Fifth Amendment Claim is dismissed.

Second, Defendant argues that Plaintiff's claim under the Fourteenth Amendment is inappropriate because the allegations regarding false arrest and detention relate to the Fourth, not Fourteenth, Amendment's guarantee of freedom from seizure.  Doc. 200, pp. 8-9; *Albright v. Oliver*, 510 U.S. 266, 274 (1994).  Plaintiff's allegations stem from his arrest on December 30, 2007.  In a § 1983 claim, the Court must isolate the constitutional violation with which Defendant is charged.  If an Amendment provides an explicit textual source of constitutional protection against the conduct complained of, that Amendment – not the more generalized notion of substantive due process under the Fourteenth Amendment – is the appropriate guide for

---

[6] In *Bonner v. City of Prichard*, 661 F.3d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

analyzing the claim.   The Supreme Court has made it clear that for claims alleging false arrest under the U.S. Constitution, the Fourth Amendment's freedom from seizure applies.  *Albright,* 510 U.S. at 274; *see also Jordan*, 298 Fed. Appx. at 805; *Graham v. Connor*, 490 U.S. 386 (1989)(analyzing an excessive force claim).   For example, the Eleventh Circuit has held that the Fourth, not Fourteenth, Amendment provides an explicit source of constitutional protection against excessive force during an arrest.  *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 n. 2 (11th Cir. 2004).  Plaintiff's vague reference in his Response to the Fourth Amendment in the context of qualified immunity,[7] is insufficient.  Doc. 210, p. 2; *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").   Thus, Plaintiff's Fourteenth Amendment claim is also inappropriate.

### 2. *Defendant is entitled to qualified immunity with respect to the 1983 claims*

In addition to the fatal flaws in the pleading of Plaintiff's constitutional claims, for § 1983 claims, qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009); *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009).  The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or

---

[7] In his Response, Plaintiff does not address Defendant's argument regarding the inapplicability of the Fifth and Fourteenth Amendments.  Doc. 212.  While arguing that Defendant is not entitled to qualified immunity, Plaintiff argues that a constitutional right was clearly established, stating that "The Fourth Amendment protects individuals from unreasonable search and seizure. An arrest without probable cause clearly violates this Fourth Amendment right."  *Id.*, p. 12.

harassing litigation.  *McCullough*, 559 F.3d at 1205; *Anderson v.* Creighton, 483 U.S. 635, 638-39 (1987).

To receive qualified immunity, a government official must establish that she was acting within her discretionary authority.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2009).  To establish that the challenged actions were within the scope of discretionary authority, a defendant must show that those actions were: "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  *Gray ex. rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).  At all relevant times, Defendant was acting within the course and scope of her employment as an Orange County Sherriff and engaging in a discretionary function.  Doc. 175, ¶ 4; *Everton v. Willard*, 468 So. 2d 936, 939 (Fla. 1985) (a law enforcement officer's decision to arrest someone is a discretionary government function). Plaintiff does not dispute that Defendant was acting within the scope of discretionary authority.

Once it is established that a defendant was acting within the course and scope of her duties, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *McCullough,* 559 F.3d at 1205.  To do so, the plaintiff must satisfy the two-prong test articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, the Court asks whether, viewed in the light most favorable to the plaintiff, the evidence shows that the officer violated plaintiff's constitutional rights.  *Gonzalez*, 325 F.3d at 1233. If such a violation occurred, then the court must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law."  *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).  Specifically, to defeat summary judgment, a plaintiff facing qualified immunity must produce evidence of a factual dispute raising a genuine issue of fact material to the determination of the underlying issue – here

whether Defendant had probable cause or arguable probable cause to arrest Plaintiff on December 30, 2007. *McCullough*, 559 F.3d at1205; *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

As discussed, Plaintiff's Third Amended Complaint does not successfully allege violations of the Fifth or Fourteenth Amendments. *Supra*, Part (III)(A)(1). Indeed, the record before this Court does not show that the Defendant violated Plaintiff's Fifth or Fourteenth Amendment rights. Accordingly, the second step of the qualified immunity analysis is not necessary for these 1983 claims.

### B. Defendant is entitled to qualified immunity against claims of malicious prosecution, false arrest and imprisonment, and defamation

Defendant argues that because she had probable cause, or arguable probable cause, for Plaintiff's arrest on December 30, 2007, she is entitled to qualified immunity against Plaintiff's state law claims. Doc. 200, p. 9. It is undisputed that Defendant was working in her capacity as a law enforcement officer when she arrested Plaintiff. Doc. 175, ¶ 4; Doc. 185, pp. 12-13.

In the context of a false arrest or malicious prosecution claim,[8] an officer is entitled to qualified immunity where that officer had arguable probable cause, that is, where "reasonable officers in the same circumstances, and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the Plaintiff. *Davis*, 451 F.3d at 762-63. Probable cause for an arrest exists if "the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy

---

[8] The standard for determining whether probable cause exists is the same under Florida law as federal law. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). The only difference with the analysis concerns the burden of proof: under Florida law, the existence of probable cause is an affirmative defense to the claim of false arrest and defendant has the burden of demonstrating probable cause. *Id.* However, in a federal § 1983 claim, the plaintiff has the burden of demonstrating the absence of probable cause. *Id.*, at 1435-36.

9

information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997); *see Ruszala v. Walt Disney World Co.*, 95 F. Supp. 2d 1323, 1325-26 (M.D. Fla. 2000) (probable cause exists if the facts and circumstances within the police officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe under the totality of circumstances that the suspect has committed or is committing an offense).  Probable cause does not require overwhelmingly convincing evidence, only "reasonably trustworthy information." *Ruszala*, 95 F.Supp. 2d at 1326.

### 1. There is no genuine issue of material fact regarding Plaintiff's claims for false arrest and malicious prosecution

Under both Florida and federal law, the existence of probable cause defeats a claim for false arrest.  *Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239 (S.D. Fla. 2007); *Mas v. Metro. Dade County*, 775 So. 2d 1010, 1011 (Fla. 3rd DCA 2001) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment.").  Similarly, for a claim of malicious prosecution, the plaintiff bears the burden to show an absence of probable cause.[9]  *Ball v. City of Coral Gables*, 548 F. Supp. 2d 1364, 1375 (S.D. Fla. 2008).  Thus, in addition to granting qualified immunity, probable cause is a complete defense to claims of false arrest and malicious prosecution under Florida law. *Ruszala*, 95 F. Supp at 1325.

Plaintiff was arrested and prosecuted for disorderly intoxication under Florida Statute § 856.011 which provides:

---

[9] Under Florida law, to establish malicious prosecution, a plaintiff must show: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.  *Burns v. GCC Beverages*, Inc., 502 So.2d 1217, 1218 (Fla. 1986).

> No person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance.

Fla. Stat. § 856.011.  An officer arresting under this statute must reasonably believe that public safety is endangered and that the defendant is creating a disturbance.  *T.L.M. v. State*, 371 So. 2d 688 (Fla. DCA 1979); *State v.* Holden, 299 So. 2d 8 (Fla. 1974).  In this case, Defendant independently observed that Plaintiff was intoxicated, uncooperative, and she determined that he was not sober enough to care for his daughter.  Doc. 198-2, p. 2.  Defendant affirmed that:

> [B]ased upon [her] training and experience as a law enforcement officer [she] determined that Mr. Basile was intoxicated. [She] also relied on the sworn statements from two witnesses, Melissa Morris and Cheryl Hussey, which informed [her] that the suspect – who turned out to be Christopher Basile – had hit at least two vehicles with his car while parking at Disney's parking area, left his vehicle running, was accompanied by a young girl and the suspect appeared to be intoxicated.

Massaro Aff. ¶ 4.  In her Supplemental Incident Report for the Orange County Sheriff's Office, Defendant stated that Plaintiff was holding on the hand rail, and could not keep his balance when she instructed him to walk with her to her patrol car.  Doc. 142-Ex. 1, p. 4.  Defendant stated that Plaintiff's breath emitted a strong distinctive odor which she recognized as alcohol, his eyes were glassy, he spoke with a slurred speech and made no sense.  *Id.* Defendant further affirmed that Plaintiff was disruptive and disrespectful and refused to sit in the prisoner seat of her patrol car when she instructed him to do so.  *Id.*   Additionally, Plaintiff had difficulty finding identification in his wallet, and was seen fumbling and dropping things.  *See Proceedings in State of Florida v. Christopher Basile*, September 24, 2008, Case No. 48-2008-MM-7763-O, Doc. 186-5, p. 15 line 24 - p. 16 line 2.  Plaintiff concedes that at the time of his arrest, his gait was unsteady, and admits to having seen witnesses' statements that he hit other vehicles in the parking lot and left his rental car running.  Basile Dep., pp. 12-13, 15.

In his Response, Plaintiff argues that Defendant did not have probable cause for his arrest, but fails to present any evidence creating a genuine issue of fact.   For example, Plaintiff maintains, without evidence that he had personal knowledge, that Defendant did not rely upon the statements of witnesses Hussey and Morris upon making her arrest. [10]   Doc. 212, p. 10.   To the contrary, Defendant's sworn affidavit states that she did rely on these witnesses' testimony, and her own first person observations, in her decision to arrest Plaintiff.   Massaro Aff. ¶ 4.   In the Eleventh Circuit, a factual issue must have a real basis in the record and unsupported allegations are legally insufficient to defeat a motion for summary judgment.   *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir. 2002); *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 1994). Additionally, whether a person is acquitted or there is a dismissal of the charges does not establish the lack of probable cause.   *See Ware v. U.S.,* 971 F. Supp. 1442, 1467 (M.D. Fla. 1997); *Southland Corp. v. Bartsch*, 522 So. 2d 1053, 1055 (Fla. 5th DCA 1988).

Based upon the totality of facts, observations, and circumstances in her knowledge, the Court finds that Defendant had arguable probable cause to arrest Plaintiff for disorderly

---

[10] In his Response, Plaintiff reiterates the misguided argument that his state criminal proceedings have a preclusive effect on the finding of probable cause in the context of qualified immunity. Doc. 212, pp. 11, 15-18.   As the Court previously stated in denying Plaintiff's Motion for Summary Judgment, Plaintiff mischaracterizes the preclusive effect of a determination in a state criminal proceeding and its significance in a federal civil suit.   *See* Doc. 209, p. 5.   This Court has determined that the state court's finding is not preclusive on the issue of probable cause.   *See* Doc. 166, p. 26. n. 23 ("a state court finding is not preclusive on the issue of probable cause for the §1983 claim, since only 'arguable probable cause,' and not actual probable cause, is necessary for a law enforcement officer to be entitled to qualified immunity" *citing Jacobson v. Mott*, 623 F.3d 537, 542 (8th Cir. 2010)).   Indeed, neither the doctrines of *res judicata* nor collateral estoppel are applicable to this issue.   *Ball v. City of Coral Gables*, 548 F. Supp. 2d 1364 (S.D. Fla. 2008) (*res judicata* and collateral estoppel are inapplicable where the individual officers and their employer were not parties to the criminal action, and were not in privity with the state of Florida).   The doctrines of *res judicata* and collateral estoppel are meant to prevent the same parties from litigating issues that have already been decided.   *Id.*   The common identity of the parties and issues required to apply these doctrines are not present here, where the claims and parties are different from Plaintiff's previous criminal actions.   *Ball*, 548 F. Supp. 2d at 1374; *Winegard v. Emerald Venture Florida LLC*, 438 F.3d 1288, 1293 (11th Cir. 2006).

intoxication. Indeed, the record evidence demonstrates that Defendant reasonably believed that public safety was endangered and acted the way "reasonable officers in the same circumstances and possessing the same knowledge" would have acted. *Davis*, 451 F.3d at 762; *citing Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Defendant reasonably could have believed that probable cause existed in light of the information she possessed at the time of Plaintiff's arrest. Additionally, with respect to malicious prosecution, there is no record evidence of malice, which is a necessary element of the claim.[11]  *See Burns*, 502 So.2d at 1218. Accordingly, Plaintiff's state law claims for false arrest and malicious prosecution will be dismissed.

### 2.  *Plaintiff's claim for defamation must be dismissed*

Plaintiff alleges that Defendant defamed him during his criminal proceedings in the Orange County Courthouse. Doc. 175, p. 13. Specifically, Plaintiff alleges Defendant said that he was a "punk", a "drunkard", and "his kids should – should not have him in her life" and that she would not be surprised if Plaintiff was a "child molester". *Id*. Plaintiff further alleges that Defendant knew these statements to be false and published them to embarrass and humiliate him, causing irreparable harm to his reputation and credibility. *Id.*

To state a claim for defamation under Florida law, a plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999).

---

[11] Plaintiff's only claims that Defendant acted with malice are speculative and unsupported by the record. *See* Doc. 175, p. 10 ("Defendant Massaro had an ulterior motive, namely, personal financial benefit, for arresting Plaintiff and charging him with crimes he had not committed. Defendant Massaro was seeking promotion to and, ill-advisedly, was later promoted to detective."). Defendant maintains that she had no malice, and indeed did not know Plaintiff prior to his arrest on December 30, 2007. Massaro Aff. ¶ 5.

In arguing that she is entitled to summary judgment on the defamation claim, Defendant explains that Plaintiff testified at his deposition that he did not personally hear these alleged statements, but he believes that Defendant was speaking to Hussey and Morris.  Basile Dep., p. 38, lines 14-25.  Plaintiff also testified that although information about his 2007 arrest was accessible on the internet, he could not specify damages to his reputation flowing from Defendant's alleged statements.  *Id.*, pp. 35-36.  Defendant argues that statements made in connection with or in the course of a judicial proceeding are absolutely immune from defamation claims, even if such statements are not made in court or under oath.  Doc. 200, p. 18; citing *Ross v. Blank*, 958 So. 2d 437, 441 (Fla. 4th DCA 2007) (defendant's alleged statements that appellant met the criteria for a pedophile or sexual abuser, made to a doctor testifying in the litigation, were made in the course of litigation and privileged); *Fariello v. Gavin*, 873 S. 2d 1243, 1245 (Fla. 5th DCA 2004) (defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or malicious those statements might be, provided the statements are relevant to the subject of inquiry).  In his Response, Plaintiff does not address his claim for defamation.  *See* Doc. 212.

The Court agrees that Defendant's alleged statements, spoken to witnesses of the underlying incident in the hallway of the Orange County Courthouse, are likely protected from liability by the litigation privilege as statements made in the course of litigation.  *Ross*, 958 So. 2d at 441; *Fariello*, 873 S. 2d at 1245.  More importantly, however, it is evident that Plaintiff has failed to provide evidence supporting two of the elements for a claim of defamation.  *Valencia*, 728 So. 2d at 330.  First, Plaintiff has not provided any evidence of falsity of the alleged

statements, such as evidence that he does not have an alcohol problem.[12]  Second, Plaintiff has not identified any injury or damage caused by the Defendant's alleged statements made to third parties during his criminal proceedings.  Basile Dep., pp. 35-36.  Having failed to provide any evidence of falsity or damages, Plaintiff's defamation claim fails.

## IV.   <u>CONCLUSION</u>

Therefore, because no genuine issues of material fact exist and there is an absence of evidence to support Plaintiff's claims against Defendant, the Court finds that Defendant is entitled to judgment in her favor as a matter of law.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. Defendant Teresa Massaro's Motion for Summary Judgment on Plaintiff's Third Amended Complaint, filed on April 10, 2012 (Doc. 200) is **GRANTED.**

2. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

3. Given the disposition of this action, Defendant's Motion for Sanctions (Doc. 191) is **DENIED.**

4. The Clerk is further directed to terminate all deadlines, deny all pending motions as moot, and close this case.

**DONE** and **ORDERED** in Orlando, Florida on September 10, 2012.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

---

[12] Defendant's other alleged comments, spoken to third parties, were the opinions that Plaintiff should not have custody of his children and that she would not be surprised if he were a child molester.  *See* Doc. 175, p. 13.  These are opinions, the truth or falsity of which is irrelevant, and are not actionable statements.  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (2008) (an opinion can only be defamatory where  is reasonably implies false and defamatory facts)

15

**Copies furnished to:**
Counsel of Record
Unrepresented Parties